IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LISA R. F.,[1]  )
 )
       Plaintiff,  )
 )
vs.  )  Case No. 17-cv-1186-CJP[2]
 )
COMMISSIONER OF SOCIAL  )
SECURITY,  )
 )
       Defendant.  )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in March 2014, alleging disability as of January 9, 1999. After holding an evidentiary hearing, ALJ Christina Young Mein denied the application on November 2, 2016. (Tr. 14-23). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order in order to protect her privacy. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 27.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in assessing plaintiff's ability to use her right arm and hand in that she improperly discounted the opinions of the state agency reviewers and the findings of the examining consultant.

2. The ALJ failed to fully develop the record.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step

three.  If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir.

2010), and cases cited therein.

## The Decision of the ALJ

ALJ Mein followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She found that plaintiff had severe impairments of status post gunshot wound to the right axilla with degenerative osteoarthritic changes of the right glenohumeral joint, and obesity.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level with postural, manipulative, and environmental limitations. As is relevant here, the ALJ found that plaintiff could occasionally push/pull with her right (nondominant) arm; never reach overhead with her right arm; and frequently handle and finger with her right hand. She had no past relevant work. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was not disabled because she was able to do jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1965 and was almost 51 years old on the date of the

ALJ's decision. (Tr. 136). She had a 9th grade education. (Tr. 130-131). She had not worked in the past 15 years. (Tr. 159).

Plaintiff said she was unable to work because she had been shot in the back and it "messed [her] right arm up." (Tr. 129). At the initial interview, an agency employee noted that she "showed limited use of right hand. She barely used it or moved it without the help of her other (left) hand." (Tr. 138).

Plaintiff reported that she had no feeling in her right hand and arm. (Tr. 143). She needed help with buttons and putting on socks. Someone else had to fix her hair. (Tr. 187).

2. **Evidentiary Hearing**

Plaintiff was not represented by an attorney at the evidentiary hearing in June 2016. (Tr. 30-31).

Plaintiff was 5' 2" tall and weighed 176 pounds. She was left-handed. She lived with a friend who helped take care of her. (Tr. 35-36). She had Medicaid. (Tr. 38). In 1999, before she got shot, she worked in the kitchen at Sheba's. (Tr. 38).

Plaintiff testified that she was raped and robbed. She was shot, and the bullet was still in her body. She had muscle spasms and nerve pain in the right side of her body. (Tr. 39-40).

Plaintiff could dress, but her friend helped her with buttons. She usually just wore a robe. She did not prepare meals; she just put TV dinners in the microwave. She used a lot of paper plates. Her friend did the dishes and

laundry.  She spent most of her time sleeping or watching TV.  (Tr. 42-43).

A vocational expert (VE) also testified.  The ALJ asked him a hypothetical question which corresponded to the ultimate RFC findings.  The VE testified that this person could do the jobs of inserting machine operator, power screwdriver operator, and burr grinder for optical goods.  If she were unable to use her right arm at all, there would be no jobs at the light exertional level that she could do. (Tr. 45-46).

### 3.  Medical Records

Plaintiff was seen at a Southern Illinois Healthcare Foundation clinic in April 2013.  She complained of numbness in her right hand and arm.  She said she had been shot in the back and the bullet was still in there.  The transcript contains only the first page of the office notes; there is no record of the findings on exam or treatment recommendations.  (Tr. 229).

Dr. Adrian Feinerman performed a consultative physical exam in July 2014. Plaintiff said she had pain in her right upper extremity.  She had been shot in the back in 1999.  The shot had damaged her axilla (armpit area).  She said she was "unable to use her right hand."  On exam, she had a decreased range of motion of the right shoulder.  Flexion of the right shoulder was reduced to 90° out of 150°, abduction was reduced to 45° out of 150°, adduction was reduced to 10° out of 30°, and internal and external rotations were reduced to 60° out of 80°.  She had decreased grip strength in the right hand.  She had decreased fine and gross manipulation with the right hand because she was only able to fully flex (bend) the

right long finger. There was atrophy of the right hand. Dr. Feinerman noted "severe" difficulty with a number of right hand functions, including opening a door using the door knob, picking up a coin, buttoning and unbuttoning, picking up and holding a cup, tying shoelaces, and turning a page. Towards the end of his narrative report, Dr. Feinerman stated:

> Claimant is able to sit, stand, walk, hear, speak, lift, carry, handle objects, and can handle funds on her own behalf. This claimant complains of pain in her right upper extremity secondary to a gunshot wound to the back that went to her right axilla. She now is unable to user [sic] right hand.

(Tr. 235-245).

In July 2015, an MRI of plaintiff's right shoulder showed metallic artifact from a bullet in the humeral head. The examination was limited by motion artifact; plaintiff said her right shoulder chronically twitched and she could not control it. The bullet in the head of the humerus also limited the evaluation. There was mild infraspinatus and supraspinatus atrophy, at least a partial articular sided tear of the cuff, and acromioclavicular early osteoarthritis. (Tr. 269).

Plaintiff saw Dr. Rice at the Health and Opportunity Center in June 2016. She complained of chronic right shoulder pain and a new onset of tingling in the left wrist. On exam, she had effusion in an unspecified location and muscle weakness on the right. Dr. Rice prescribed Baclofen and Gabapentin, as well as physical therapy for her right shoulder. (Tr. 259-260).

Plaintiff apparently saw Dr. Daniel Schwarze (or a physician's assistant under his supervision) in August 2016. Plaintiff submitted a form indicating she

had been seen on August 8, 2016, and had appointments scheduled in October 2016. She had been prescribed Tylenol with Codeine #3. For "type of treatment received," she wrote "received a cortezone [sic] (pain) shot; MRI; physical therapy at Touchette." (Tr. 279).

The last medical record is a referral order for physical therapy issued by Dr. Schwarze's office on August 8, 2016, for physical therapy on her right shoulder. The order states she has severe osteoarthritis and a bullet fragment present. (Tr. 280). There is no record of any office visit from Dr. Schwarze's office.

### 4. State Agency Reviewers' Opinions

Two state agency consultants assessed plaintiff's RFC based on a review of the records. Both indicated that her ability to perform fine and gross manipulations was "limited" in the right hand. Both indicated that her ability to reach in any direction including overhead was limited as to "right overhead." (Tr. 52-53, 64).

## Analysis

Plaintiff argues that the ALJ erred in assessing her ability to use her right arm and hand in that she improperly discounted the opinions of the state agency reviewers and the findings of Dr. Feinerman, and failed to fully develop the record.

The ALJ determined that plaintiff could never reach overhead with her right arm, but assigned no other limitations in reaching. She determined that plaintiff could frequently handle and finger with her right hand, i.e., perform gross and fine

manipulations. Frequent is defined as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, *5-6.

The Seventh Circuit has recognized that fingering is required in most unskilled sedentary jobs and handling is required in almost all jobs. *Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014). According to the DOT, all three jobs identified by the VE require frequent reaching and handling and occasional fingering. 1991 WL 671755; 1991 WL 678013; 1991 WL 678865.

The ALJ acknowledged that Dr. Feinerman found that plaintiff had a decreased range of motion of the right shoulder, decreased grip strength of the right hand, and atrophy of the right hand. She acknowledged that Dr. Feinerman found decreased fine and gross manipulation with the right hand and that she was only able to fully flex the right long finger. She noted that plaintiff had "severe difficulty performing fine and gross manipulation with her right hand." (Tr. 19). Two pages later, the ALJ said that she gave Dr. Feinerman's opinion "partial weight" because it was based on an examination, but she discounted his statement that plaintiff was unable to use her right hand because that statement was based on plaintiff's subjective allegation rather than the objective medical evidence which "shows that she is able to perform fine and gross motor tasks with difficulty." (Tr. 21).

Obviously, the statement that plaintiff is unable to use her right hand is not literally true - even plaintiff does not make that claim. The issue is how effectively she can use her right hand. Dr. Feinerman found that plaintiff has reduced range

of motion in her right shoulder, weakness and atrophy in her right hand, and the ability to fully flex only the long finger. Further, she has "severe difficulty" in performing simple maneuvers such as buttoning, turning a page, and picking up and holding a cup. Dr. Feinerman was acting as a state agency consultant when he examined plaintiff. As such, he is unlikely to exaggerate her disability. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013).

Despite Dr. Feinerman's findings, the ALJ concluded that plaintiff can perform unlimited reaching, except for overhead, and is able to perform fine and gross manipulations for up to 2/3 of the work day. The ALJ cited to no specific evidence to support that conclusion except for "objective evidence and that [sic] claimant's daily activities." (Tr. 21). The ALJ acknowledged that the objective medical evidence "shows that she is able to perform fine and gross motor tasks with difficulty." (Tr. 21). She described plaintiff's daily activities as "extremely limited." (Tr. 20).

The ALJ's conclusion that plaintiff can frequently perform fine and gross manipulations with her right hand is not supported by substantial evidence. The opinions of the state agency reviewers do not provide substantial support because they concluded that plaintiff's ability to handle and finger was "limited," but they did not quantify her ability to perform those functions. And, Dr. Feinerman concluded, based on examination, that she had severe difficulty in performing handling and fingering.

The Commissioner argues that the determination of a claimant's RFC is an

issue reserved to the ALJ.  That is true, but it is also true that the ALJ's RFC determination must be supported by substantial evidence.  According to the Commissioner, the RFC determination was supported by the objective evidence and plaintiff's activities, "including her ability to perform self-care and hygiene tasks independently, lift a gallon of milk using her left hand with help of her right hand, grocery shop, and use public transportation."  Doc. 28, pp. 7-8.  However, none of those activities suggest that plaintiff can perform fine and gross manipulations for up to 2/3 of an 8 hour day.  The objective medical evidence does not suggest that either.

Dr. Feinerman's report establishes that plaintiff has severe difficulty performing even simple maneuvers such as picking up a cup and turning a page.  The ALJ did not offer any reason to doubt the correctness of his observations.  Rather than grapple with the substance of the report, the ALJ focused on Dr. Feinerman's statement that plaintiff was unable to use her hand.  That was error.  While it is true that an ALJ is not required to discuss every piece of evidence in the record, it is well-established that an ALJ "may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014), collecting cases.

Plaintiff is also correct that the ALJ failed to develop the record by obtaining medical records identified in the statement she filed at Ex. 7F.  Plaintiff said she had been seen on August 8, 2016, and had appointments scheduled in October 2016.  She had been prescribed Tylenol with Codeine #3.  For "type of treatment

received," she wrote "received a cortezone [sic] (pain) shot; MRI; physical therapy at Touchette." (Tr. 279). There is no indication that the ALJ requested these records.

An ALJ has an independent duty to develop the record fully and fairly. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). This duty is enhanced where, as here, the clamant is not represented by counsel. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009),

The Commissioner points out that, at the hearing, plaintiff said she was being treated by Dr. Rice; the ALJ asked, "So, if I get records from Dr. Rice, that should complete your treatment, is that correct?" Plaintiff replied, "Yes Ma'am." (Tr. 33). The Commissioner then suggests that the ALJ did enough by requesting Dr. Rice's records. She also argues that plaintiff has not come forward even now with the missing records and therefore she has not demonstrated that the omission was prejudicial. Doc. 28, pp. 14-15.

The Commissioner's arguments must be rejected. The ALJ rejected plaintiff's subjective allegations based in part on her perception that plaintiff had not sought the type of treatment "one would expect for an individual experiencing the pain levels described by the claimant." (Tr. 20). However, plaintiff indicated that she had gotten a cortisone shot and had been prescribed pain medication, treatment that was ignored by the ALJ. The ALJ faulted her for not following up on the recommendation for physical therapy, but plaintiff referred to "physical therapy at Touchette." While it is not entirely clear whether she had actually

attended physical therapy, in view of her unrepresented status, the ALJ should have developed the record. "Although pro se litigants must furnish some medical evidence to support their claim, see *Johnson v. Barnhart*, 449 F.3d 804, 808 (7th Cir. 2006), the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms*, 553 F.3d at 1098.

The Court must conclude that ALJ Mein failed to build the requisite logical bridge between the evidence and her conclusion as to plaintiff's RFC, and that she failed to fully and fairly develop the record. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   September 19, 2018.**

<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**